UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No.

GREGORY BELL;
JOSE ACEVEDO; and
DENISE DURBIN, individually and as
parent and next friend of
K.D. and B.D.;
for themselves and on behalf of all
others similarly situated,

Plaintiffs,

v.

THE 3M COMPANY (f/k/a Minnesota
Mining and Manufacturing Co.);
THE ANSUL COMPANY; and
NATIONAL FOAM,

Defendants.

_____

**CLASS ACTION COMPLAINT FOR PROPERTY RELATED DAMAGES
AND DEMAND FOR JURY TRIAL**
_____

Plaintiffs GREGORY BELL, JOSE  ACEVEDO, and DENISE DURBIN, individually, and

as parent and next friend of K.D. and B.D. (collectively, "Plaintiffs") for themselves individually and

on behalf of all others similarly situated, by and through their attorneys, and for their complaint

against Defendants, THE 3M COMPANY (f/k/a Minnesota Mining and Manufacturing Co.), THE

ANSUL COMPANY, and NATIONAL  FOAM (collectively, "Defendants"), allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action against Defendants for property related damages because their water supplies and real property have been contaminated by chemicals Defendants manufactured, distributed and sold with knowledge of and with inadequate warning of the toxic effects these chemicals would cause if they contaminated the environment, and without regard to Plaintiffs and the Plaintiff Class who would forseeably be exposed to these chemicals once they infiltrated the environment, including the groundwater.  For decades the Defendants manufactured and sold Aqueous Film Forming Foam ("AFFF"), a firefighting suppressant, to the United States Air Force, including Peterson Air Force Base in El Paso County, Colorado ("Peterson").

2.      Residents in the area near Peterson have obtained and continue to obtain their drinking water from groundwater pumped by wells.  For decades, residents near Peterson have been drinking water containing toxic chemicals, including Perfluorinated Compounds ("PFCs"), which include perfluorooctane sulfonate ("PFOS") and perfluorooctanoic acid ("PFOA"), perfluoroheptanoic acid (PFHpA) and other species of PFCs. When consumed, PFCs can cause numerous and serious health impacts.  Additionally, the presence of PFCs in household water in residential homes interferes with property rights.

3.      The Defendants manufactured AFFF that contained fluorochemical surfactants, believed to include PFOS, PFOA, and/or certain other PFCs that degrade into PFOS or PFOA.  As the manufacturers of AFFF, the Defendants knew or should have known that the inclusion of PFCs in AFFF presented an unreasonable risk to human health and the environment.  Defendants also knew or should have known that PFCS are highly soluble in water, and highly mobile and highly

2

persistent in the environment, and highly likely to contaminate water supplies if released to the environment.

4.     Defendants marketed and sold their products with knowledge that large quantities of toxic AFFF would be used in training exercises and in emergency situations at Air Force bases in such a manner that dangerous chemicals would be released into the environment.

5.     The residents in the communities in the Class Geographic Area and their individual properties have been exposed for years, if not decades, to PFCs including at concentrations hazardous to human health. Residents had no way to know that they were consuming water contaminated with PFCs until the contamination was disclosed to them.

6.     The Plaintiffs bring this suit on behalf of themselves and all those similarly situated to recover for property related damages.

## PARTIES

7.     Plaintiff Gregory Bell is an owner and occupant of real property in the Security Water District located at 270 Dix Circle, Colorado Springs, Colorado 80911. He has owned the property since July 2000, and has consumed water there.

8.     Plaintiff Jose Acevedo is an owner and occupant of real property in the Security Water district located at 4831 Pathfinder Drive, Colorado Springs, Colorado 80911, and also owns and formerly occupied property located at 335 Oneil Court, Colorado Springs, Colorado 80911. He has resided in and consumed water in these properties since November 2014.

9.     Plaintiff Denise Durbin is an occupant of real property located in the Security Water District at 513 Aspen Drive, Colorado Springs, Colorado 80911. She is the natural mother and

guardian of her daughters K.D. and B.D., both minors. Ms. Durbin and her daughters have resided in and consumed water in the property since October 2008.

10.     Defendant The 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business at 3M Center, St. Paul, Minnesota 55133.  Beginning before 1970 and until at least 2002, 3M manufactured and distributed PFOS-based AFFF that contained fluorocarbon surfactants containing PFCs.

11.     Defendant The Ansul Company (hereinafter "Ansul ") is a Wisconsin corporation, having a principal place of business at One Stanton Street, Marinette, Wisconsin 54143.  At all times relevant, Ansul manufactured fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFCs.

12.     National Foam,  Inc. (a/k/a Chubb National Foam) (National Foam, Inc. and Chubb National Foam are collectively referred to as "National Foam") is a Pennsylvania corporation, having a principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382.

13.     At all times relevant, National Foam manufactured fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFCs.

## JURISDICTION AND VENUE

14.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because members of the proposed Plaintiff classes are citizens of states different from at least some of Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events or omissions by Defendants giving rise to the claims asserted herein occurred in this District, have caused harm to Class Members residing in and to real property in this District, and Plaintiffs reside in this District.

## GENERAL FACTUAL ALLEGATIONS

16.     PFCs are manmade chemicals that do not exist in nature.  There are numerous chemicals in the PFC family, including PFOS and PFOA.  Defendants manufactured and used PFCs to make AFFF.

17.     PFCs are persistent.  Due to the strength of multiple carbon-fluorine bonds, PFCs break down very slowly in the environment.  PFCs are chemically biologically stable and resistant to environmental degradation.  PFCs can persist in the environment for decades.  PFCs are also water soluble, making them mobile in groundwater and the environment.

18.     Toxicology studies show that PFCs are readily absorbed after oral exposure and accumulate in the human body.  There are a number of health risks associated with exposure to PFCs.  For example, PFOS and PFOA exposure is associated with increased risk in humans of testicular cancer and kidney cancer, disorders such as thyroid disease, high cholesterol, ulcerative colitis, and pregnancy-induced hypertension, as well as other conditions.[1]  EPA has also advised that exposure to PFCs may result in developmental effects to fetuses during pregnancy or to breast-fed infants.  *Id.*

---

[1] https://www.epa.gov/sites/production/files/2016-05/documents/drinkingwaterhealthadvisories_pfoa_pfos_5_19_16.final_.1.pdf

19.     AFFF that contained PFCs was developed in the 1960s as an alternative to existing firefighting foam.

20.     Upon information and belief, 3M, Ansul and National Foam each manufactured AFFF containing PFCs, among other reasons, for sale to the Department of Defense, and Defendants sold AFFF that was used at Peterson.

21.     In the early 1960's, 3M and the United States Naval Research Laboratory developed AFFF, a product created to extinguish jet fuel fires, which are largely impervious to water, by smothering them. 3M AFFF, which is produced through a 3M process called electrochemical fluorination, or ECF, contained PFCs. Other formulations of the foam purchased by the Department of Defense, manufactured by Defendants Ansul and National Foam to compete with 3M, are synthesized through telomerization, containing PFCs, and producing compounds that can break down into PFOA and other PFCs.

22.     It estimated that 75% of the military AFFF inventory is ECF-based product. This is not surprising since for most of the past 30 years 3M was the primary supplier of AFFF to the DOD [Department of Defense] stock system.[2]

23.     The military Qualified Products Database listed 3M AFFF products as early as 1970, National Foam products by 1973, and Ansul products as early as 1976.[3]

---

[2] Fire Fighting Foam Coalition, "Estimated Quantities Of Aqueous Film Forming Foam in the United States", August, 2004.

[3] http://dcppe.org/Systems/AFFF/MIL-F-24385%20QPL%20History%20for%20Type%206%20AFFF.pdf

24.    According to a 2011 Department of Defense risk alert document, "through 2001, the DoD purchased AFFF from 3M and/or Ansul, Inc.  3M supplied PFOS-based AFFF under the product name, 3M Light Water AFFF."[4]

25.    At any given time during its operation, Peterson housed and used thousands of gallons of AFFF concentrate manufactured by Defendants.  The AFFF was expected to reach Peterson without substantial change in the condition in which it was sold to the Air Force, and it did.

26.    Air Force personnel conducted training exercises at Peterson including firefighting and explosion training that used of AFFF manufactured by Defendants for decades.

27.    Upon information and belief, instructions and warning labels and material safety data sheets that were provided with the AFFF by the Defendants, which, at least at significant times, did not fully describe the health and environmental hazards of AFFF which they knew or should have known.

28.    Upon information and belief, Defendants had known of these health and environmental hazards for years.  For example, by the mid-1980s, 3M began a major program to review personnel handling of fluorochemicals and determined that fluorochemicals could bioaccumulate.

29.    3M, who was the predominant manufacturer of AFFF, ceased production of PFOS-based AFFF in 2002.  Under pressure from the EPA, on May 16, 2000, 3M announced it would phase out production of two synthetic chemicals, PFOS and PFOA, that it had developed more than fifty years earlier.[5]

---

[4] DoD Risk Alert #03-11, "Aqueous Film Forming Foam",
http://www.denix.osd.mil/cmrmp/ecmr/ecprogrambasics/resources/chemical-material-emerging-risk-alert-for-afff/
[5] 3M press release,  "3M Phasing Out Some Of Its Specialty Materials", May 16, 2000,
http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0641.pdf#page=1

30.     An EPA internal memo on the day of 3M's phase out announcement stated: "3M data supplied to EPA indicated that these chemicals are very persistent in the environment, have a strong tendency to accumulate in human and animal tissues and could potentially pose a risk to human health and the environment over the long term… . [PFOS] appears to combine Persistence, Bioaccumulation, and Toxicity properties to an extraordinary degree."[6]

31.     In contrast, 3M's news release insisted that "our products are safe" while extolling their "principles of responsible environmental management" as driving the cessation of production.[7]

32.     Testing data released by the EPA in January, 2016 identified measurable levels of PFOS and PFOA in 94 public water systems across the nation, including three southwest El Paso County systems proximate to Peterson Air Force Base: Security, Wakefield, and Fountain.[8]

33.     An August, 2016 U.S. Army Corps of Engineers study, "Preliminary Assessment Report for Perfluorinated Compounds at Peterson Air Force Base", confirmed the use of AFFF at Peterson and that the fire training areas on the base were possible sources of PFC contamination of the groundwater supply.[9]

34.     For example, "It has reached the point where the water in all 32 of the Security Water and Sanitation District's municipal wells is contaminated with PFCs at levels exceeding an EPA health advisory limit of 70 parts per trillion. At one well, PFCs have hit 1,370 PPT, federal data

---

[6] EPA internal memo, "Phaseout of PFOS", May 16, 2000,
http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0629.pdf#page=2
[7] 3M press release,  "3M Phasing Out Some Of Its Specialty Materials", May 16, 2000,
http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0641.pdf#page=1

[8] John Hazelhurst, "Water Districts Close Wells In 'Abundance of Caution'", The Colorado Springs Business Journal, January 21, 2016, http://www.csbj.com/2016/01/21/water-districts-close-wells-in-abundance-of-caution/
[9] U.S. Army Corps of Engineers, "Final Preliminary Assessment Report for Perfluorinated Compounds at Peterson Air Force Base El Paso County, Colorado", August, 2016.

show—nearly 20 times higher than the EPA health advisory. EPA officials recommended that pregnant women and small children should not drink local water."[10]

35.     Upon information and belief, personnel at Peterson continued to use AFFF containing PFCs for training and emergencies after 2002.

36.     In May 2016, Plaintiffs and the Plaintiff class were advised that their household water was contaminated with PFCs at hazardous levels and advised to seek alternate drinking water supplies.

37.     The concentrations of PFCs found in the water near Peterson has been caused by or contributed to by releases of AFFF on Peterson to the environment.  As was reasonably forseeable by Defendants, the training and other exercises and fire response occurred on open ground and at times were discharged to open ground and surface waters.  As was reasonably foreseeable by Defendants, the foam and its contents, including PFCs, migrated into and through the soil in and around Peterson to the groundwater under Peterson, and from there migrated to groundwater wells in the Class Geographic Area that have been contaminated.  The PFC contamination is therefore directly linked to Defendants' manufacture, distribution and sale of AFFF.

38.     It was reasonably foreseeable to Defendants that Plaintiffs and the Plaintiff Class, as users of groundwater that supplied wells near Peterson, would use and consume groundwater affected by AFFF releases at Peterson, and would be damaged by such releases.

_____

[10] Bruce Finley, "Drinking Water In Three Colorado Cities Contaminated With Toxic Chemicals Above EPA Limits", The Denver Post, June 15, 2016, http://www.denverpost.com/2016/06/15/colorado-widefield-fountain-security-water-chemicals-toxic-epa/

39.     Defendants knowingly manufactured, sold, and distributed a dangerous and defective product, failed to provide sufficient warnings to protect bystanders, such as the Plaintiffs and the Plaintiff class, and failed to recall their products when they took them off the market.

40.     Groundwater wells tested within the Class Area have shown elevated concentrations of PFCs.

41.     As a direct and proximate result of the contaminated groundwater and contaminated household water near Peterson, Plaintiffs and the Plaintiff class have suffered annoyance and discomfort, loss of use and loss of use and enjoyment of their properties, certain costs and their property rights have been affected.

## CLASS ACTION ALLEGATIONS

42.     Plaintiffs incorporate the foregoing paragraphs of this Complaint as though fully set forth herein.

43.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3) on behalf of a Class consisting of all other persons similarly situated as members of the proposed classes:

44.     This action is brought by the Plaintiffs on their own behalf and as representatives of the Class defined herein.

45.     The Members of the Class are defined as:

All persons who own or occupy residential properties in the geographic area defined by the geographic areas of the City of Fountain Water District, the Security Water and Sanitation District and the Widefield Water and Sanitation District, and the geographic area bounded by the southern boundary of the Fountain Water District on the north, I-25 on the West, southernmost point of Hanover Road on the south and the Eastern Boundary of the Widefield Water District extended to Hanover Road ("the Class Geographic Area"). *See* Appendix A attached hereto (outlining the Class Geographic Area and incorporated herein).

10

46.     Excluded from the Class are: (a) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (b) the Judge to whom this case is assigned and the Judge's staff; (c) any class counsel or their immediate family members; (d) any State or any of its agencies; and (e) the municipalities of Fountain, Security and Widefield and the respective water districts.

47.     The Class satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Fed. R. Civ. P. 23.

### Numerosity

48.     The members of the Class are so numerous that joinder of all members is impracticable.  The population in the Class Geographic Area is estimated to include well over 5,000 residents.  Plaintiffs believe that there are thousands of members of the Class who own and/or occupy properties have been impacted by PFCs from Defendants' AFFF as described herein. Members can be easily identified from public records, such as property tax records, municipal water records, and other public records and notified of the pendency of this action by mail or via other public forums.

### Typicality

49.     Plaintiffs' claims are typical of the claims of the members of the Class since all members of the Class are similarly affected by Defendants' conduct resulting in injury to all members of the Class.

### Adequate Representation

50.     Plaintiffs will fairly and adequately protect the interests of members of the Class and have retained counsel competent and experienced in class action and environmental litigation.

11

51.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the resources to do so.

52.     Neither Plaintiffs nor their counsel has interests adverse to any of the Classes.

### Predominance of Common Questions

53.     Plaintiffs bring this action under Rule 23(b)(3) because numerous questions of law and fact common to class members predominate over any question affecting only individual members.  The answers to these common questions will advance resolution of the litigation as to all class members.  These common legal and factual issues include:

a.     Whether Defendants owed a duty to Plaintiffs and members of the Subclasses and whether Defendants breached that duty;

b.     Whether Defendants knew or should have known that their manufacture of AFFF containing PFCs and perhaps other toxic chemicals was unreasonably dangerous;

c.     Whether Defendants knew or should have known that their AFFF contained persistent, stable and mobile chemicals that were likely to contaminate groundwater water supplies;

d.     Whether Defendants failed to sufficiently warn users of the potential for harm that resulted from use of their products;

e.     Whether Defendants became aware of health and environmental harm caused by PFCs in their AFFF products and failed to warn users and Plaintiffs and the Class of same; and

f.     Whether the members of the Classes have sustained damages and the proper measure of damages.

g.     Whether Defendants are strictly liable to Plaintiffs and the Class for their actions;

h.      Whether Defendants were unjustly enriched by their actions at the expense of Plaintiffs and the Plaintiff class.

### Superiority

55.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable.

56.     Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final legal and equitable relief with respect to the class as a whole.

57.     Furthermore, the expense and burden of individual litigation outweighs the individual damages suffered by individual Class members, making it impossible for members of the Class to individually redress the wrongs done to them.

58.     Class treatment of common questions of law and fact will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

59.     There will be no difficulty in the management of this action as a class action.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (NEGLIGENCE)

60.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

61.     Defendants had a duty to manufacture, market, and sell their AFFF in a manner that avoided harm to those who forseeably would come into contact with it.

62.     Defendants knew or should have known that the manufacture of AFFF containing PFCs was hazardous to human health and the environment.

63.     Defendants further knew or should have known that it was unsafe and/or unreasonably dangerous to manufacture AFFF using PFCs because it was highly probable that the chemicals would migrate into the environment, including Air Force bases such as Peterson, and contaminate the groundwater used to supply household water.

64.     Knowing of the dangerous and hazardous properties of the AFFF, Defendants had the duty to warn of the hazards of ingesting water containing PFCs.

65.     The Plaintiffs and the Class were foreseeable victims of the harm caused by Defendants' AFFF.

66.     Defendants negligently designed, engineered, developed, fabricated and tested AFFF and PFCs, and the associated warnings, and thereby failed to exercise reasonable care to prevent the AFFF and the components from presenting an unreasonable risk of harm to human health and the environment and persons who would come in contact with it, including Plaintiffs and the Plaintiff Class.

67.     As a result of Defendants' breaches of their legal duties, the groundwater water in and around the Peterson including the affected groundwater in the Class Geographic Area, has been, and at continues to be, contaminated with PFCs.

68.     As a result of Defendants' negligent, reckless and/or intentional acts and omissions alleged herein, groundwater supplying household water has been contaminated with PFCs.

69.     Defendants' negligent manufacture, sale, or distribution of AFFF and their negligent misrepresentation and failure to warn, Defendants have interefered with the property rights of Plaintiffs and the Plaintiff Class.

14

70.     Defendants' acts were willful, wanton or reckless and conducted with a reckless indifference to the rights of Plaintiffs and members of the Class.

71.     As a result of Defendants' conduct and the resulting contamination, the value and marketability of the property and property rights of Plaintiff owners and the Class Member owners have been and will continue to be diminished.  Plaintiffs and the Class Members have suffered the need for and the cost of remediation of their properties and or mitigation systems for those properties, and the additional financial burdens of the cost of alterative water.  As a result of the contamination, Plaintiffs and the Class Members have lost use and enjoyment of their properties and have suffered annoyance and discomfort, inconvenience and loss of use of their properties as a direct and proximate result of the contamination of their municipal water supplies and properties by Defendants.

## SECOND CLAIM FOR RELIEF
## (DEFECTIVE PRODUCT - FAILURE TO WARN)

72.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if they were fully set forth herein.

73.     At all times relevant, Defendants were in the business of, among other things, manufacturing, selling and distributing AFFF.

74.     As manufacturers, sellers, and distributors of a commercial product, the Defendants had a duty to provide adequate, full instructions and warnings about the risks of injury posed by their products.

75.     Defendants knew or should have known that the foreseeable storage, use and disposal of the AFFF that they manufactured, sold, and distributed to Air Force bases, including Peterson, had

15

the capacity to enter the water supply, to persist there for decades, and to cause risk to human health and the environment and harm to property.

76.     At the time of the design, manufacture, sale and distribution of the AFFF, Defendants knew or should have known of the dangerous properties of their AFFF containing PFCs.

77.     Upon information and belief, the Defendants at significant times failed to provide sufficient warnings to the users of AFFF, including Peterson, that use and release of Defendants' AFFF to the environment would result in the contamination of groundwater and drinking water supplies and risks to those exposed through water supplies.

78.     Upon information and belief, the Defendants at significant times failed to provide adequate warnings to the users of the dangers to human health and the environment if their AFFF was permitted to contaminate the groundwater and water supplies.

79.     Adequate instructions and warnings would have reduced or avoided the foreseeable risks of harm posed by the use and release the AFFF.

80.     Had Defendants provided adequate warnings, the users of their AFFF would have taken measures to store, use, and dispose of AFFF so as to reduce or eliminate groundwater and drinking water contamination from AFFF.

81.     As a direct and proximate result of Defendants' failure to warn against the likelihood of contamination from their AFFF, the groundwater and household water in the Class Geographic Area has been contaminated with PFCs.

82.     As a direct and proximate result of Defendants' failure to warn of the environmental and health impacts caused by their AFFF and the release thereof, the groundwater in and around the

16

Class Geographic Area became contaminated with PFCs and has caused contamination of and damage to the real property interests of Plaintiffs and the Class.

83.     Defendants' failure to provide adequate warnings or instructions renders Defendants' AFFF a defective product.

84.     As a result of Defendants' conduct and the resulting contamination, the value and marketability of the property has been and will continue to be diminished.  Plaintiffs and the Class Members have suffered the need for and the cost of remediation of their properties and or mitigation systems for those properties, and the cost of alterative water.  As a result of the contamination, Plaintiffs and the Plaintiff Class have lost use and enjoyment of their properties and have suffered annoyance and discomfort, inconvenience and annoyance as a consequence of the contamination of their properties by Defendants.

85.     As a result of Defendants' manufacture, sale or distribution of a defective product, Defendants are strictly liable in damages to the Plaintiffs and the Plaintiff Class.

86.     Defendants' acts were willful, wanton or reckless and conducted with a reckless indifference to the rights of Plaintiffs and members of the Plaintiff Class.

**THIRD CLAIM FOR RELIEF**
**(DEFECTIVE PRODUCT - DESIGN DEFECT)**

87.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

88.     At all times relevant, Defendants were in the business of, among other things, manufacturing, selling or otherwise distributing AFFF.

89.     It was foreseeable that toxic chemicals from the AFFF that Defendants manufactured, sold and distributed would enter the water supply of the Plaintiffs and the Plaintiff Class and cause exposure and damage to their persons and property.

90.     Alternative designs and formulations of AFFF were available, technologically feasible and practical, and would have reduced or prevented the reasonably foreseeable risks of harm to Plaintiffs and the Class.

91.     Further, design, formulation, manufacture, sale and distribution of a product containing toxic chemicals that were so toxic and so mobile and persistent in the environment was unreasonably dangerous.

92.     The AFFF manufactured, sold or distributed by the Defendants was defective in design because the foreseeable risk of harm posed by the AFFF could have been reduced or eliminated by the adoption of a reasonable alternative design, and because it was unreasonably dangerous.

93.     Defendants' products were defective at the time of manufacture, thus, at the time they left Defendants' control.

94.     As a result of Defendants' manufacture, sale or distribution of a defectively designed product, the groundwater wells and water supplies and properties in and around Peterson became contaminated with toxic PFCs and damaged the Plaintiffs and the Plaintiff Class.

95.     As a direct and proximate result of Defendants' design, formulation, manufacture, sale and distribution of a defective product and the resulting contamination, the value and marketability of the property and property rights of Plaintiff owners and the Class Members owners have been and will continue to be diminished.  Plaintiffs and the Class Members have suffered the need for and the

18

cost of remediation of their properties and or mitigation systems for those properties, and the cost of alterative water.  As a result of the contamination, Plaintiffs and the Class Members have lost use and enjoyment of their properties and have suffered annoyance and discomfort, inconvenience and annoyance as a consequence of the contamination of their properties by Defendants.

96.      As a result of Defendants' design, formulation, manufacture, sale and distribution of a defective product, Defendants are strictly liable in damages to the Plaintiffs and the Plaintiff Class.

97.     Defendants' acts were willful, wanton or reckless and conducted with a reckless indifference to the rights of Plaintiffs and the Plaintiff Class.

## FOURTH CLAIM FOR RELIEF - UNJUST ENRICHMENT

98.     Plaintiffs incorporates the allegations contained in the preceding paragraphs as if fully set forth  herein.

99.     Defendants profited from the manufacture and sale of PFC-containing AFFF, and continued to do so long after they were aware of the health and environmental risks of their products. Further, Defendants have failed to recall their products to prevent the further release of their AFFF into groundwater and onto Plaintiff's and Class Members' properties.  Through Defendants' actions and inaction at the expense of Plaintiff and the Class Members, Defendants have been unjustly enriched.

100.     The Court should award as a remedy the expenditures saved and the profits obtained by Defendants at the expense of Plaintiff and the Class Members.

## DAMAGES SOUGHT BY THE CLASS

101.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

19

102.    Plaintiffs and the Plaintiff Class seek compensation for decrease in the value and marketability of the property and property rights of Plaintiff owners and the Class Member owners have been and will continue to be diminished, the need for and the cost of remediation of class properties and/or mitigation systems for those properties, and the cost s incurred for alterative water. Plaintiffs and the Plaintiff seek compensation for the loss of use, loss of use and enjoyment of their properties, and their annoyance and discomfort, and inconvenience caused by the contamination of their properties by Defendants' PFCs.

103.    Plaintiffs and the Class seek exemplary damages in an amount sufficient to deter Defendants' similar wrongful conduct in the future.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against the Defendants, as follows:

A.    An order certifying the Class pursuant to Fed.R.Civ.P. 23, designating Plaintiffs as the named representatives of the Class, and designating the undersigned as Class Counsel;

B.    An order certifying the Class under Fed.R.Civ.P. 23;

C.    An award to Plaintiffs and Class Members of compensatory damages, including interest, in an amount to be proven at trial;

D.    For disgorgement of the profits and savings which were obtained by the unjust enrichment of Defendants through their use of and at the expense of the properties of Plaintiff and the Class Members;

E.    For an award of exemplary damages;

F.    An award of attorneys' fees and costs as allowed by law;

20

G.      An award of prejudgment and postjudgment interest, as provided by law; and

H.      Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

Dated: September 18, 2016

**THE HANNON LAW FIRM, LLC**

By: */s/ Kevin S. Hannon*
Kevin S. Hannon
Justin D. Blum
1641 Downing Street
Denver, CO  80218
(303) 861-8800 - Telephone
(303) 861-8855 - Facsimile
khannon@hannonlaw.com
jblum@hannonlaw.com

Counsel for the Plaintiffs and Plaintiff Class

Plaintiffs' Addresses:
Gregory Bell
270 Dix Circle
Colorado Springs, CO 80911

Jose Acevedo
4831 Pathfinder Drive
Colorado Springs, CO 80911

Denise Durbin
513 Aspen Drive
Colorado Springs, CO 80911