**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-02351-RBJ

BELL, et al.,

      Plaintiffs,

v.

THE 3M COMPANY, et al.,

      Defendants

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

---

## I.    INTRODUCTION

Plaintiffs seek to represent over 64,000 residents of Fountain, Security, and Widefield exposed to drinking water from the City of Fountain, the Security Water and Sanitation District, and the Widefield Water and Sanitation District, and private wells that obtain groundwater from the Colorado Department of Public Health & Environment ("CDPHE") areas of investigation.[1] The drinking water has been contaminated with Defendants' Aqueous Film Forming Foam ("AFFF"), which contains dangerous levels of perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS").

Plaintiffs' respectfully request that the Court certify classes pursuant to Federal Rule of Civil Procedure 23, as set forth herein. Plaintiffs seek compensation to fund a medical monitoring program for the classes of exposed residents due to the prolonged exposure that has put them at a significantly increased risk of developing kidney and testicular cancer, thyroid disease, and high cholesterol, among other illnesses. Additionally, Plaintiffs seek to recover property damage compensation for real property owners damaged by Defendants' AFFF.

## II.    FACTUAL BACKGROUND

Defendants manufactured, marketed, and sold AFFF to the Department of Defense ("DOD") for use in firefighting efforts and training exercises, and investigations have confirmed that AFFFs were utilized at Peterson Air Force Base and Colorado Springs

---

[1] These areas are depicted in Attachments T and U of the report prepared by Paul E. Rosenfeld, Ph.D of Soil Water Air Protection Enterprise (the "Rosenfeld Report"), provided herewith as Ex. 1.

Municipal Airport (collectively "the Airfield") in Colorado Springs, Colorado since 1970.[2] Despite full knowledge of the toxic nature of their product, for decades Defendants' marketed and sold AFFF without adequate warnings fully describing the health and environmental hazards of the toxic chemicals in AFFF and their potential to contaminate water supplies. As a result, the use and disposal of AFFF at Peterson Air Force Base caused PFOA and PFOS to be released into Plaintiffs' drinking water.  It is beyond dispute that the AFFF manufactured by Defendants contained toxic perfluorinated chemicals ("PFCs"), including PFOA and PFOS. These chemicals are highly soluble in water, persistent in the environment, bioaccumulative, and most importantly, have adverse health effects when present in humans over a certain level.[3] They are Class 2B carcinogens pursuant to the International Agency for Research on Cancer ("IARC").[4]

In May of 2016, the United States Environmental Protection Agency ("EPA") issued a health advisory on the effects of PFOA and PFOS exposure in humans.[5,6] Thereafter,

---

[2] U.S. Army Corps of Engineers, *Revised Final Preliminary Assessment Report for Perfluorinated Compounds at Peterson Air Force Base El Paso County, Colorado*, November 2016, http://www.peterson.af.mil/Portals/15/documents/Public%20Notices/552503_Revised%20Final%20Peterson%20AFB%20PA_11_2016.pdf?ver=2017-05-16-162140-693 (last visited Sept. 22, 2017).

[3] U.S. Environmental Protection Agency, *Drinking Water Health Advisory for Perfluorooctanoic Acid*,https://www.epa.gov/sites/production/files/2016-05/documents/pfoa_health_advisory_final-plain.pdf (last visited Sept. 18, 2017). Exposures to PFOA/PFOS have been statistically significantly associated with at least six defined adverse medical outcomes ("AMOs"). *See* Ex. 2, Report of Stephen King, Ph.D., M.P.H. ("King Report").

[4] International Agency for Research on Cancer, *IARC Monographs on the Evaluation of Carcinogenic Risks to Humans, List of Classifications, Volumes 1-119*, http://monographs.iarc.fr/ENG/Classification/latest_classif.php (last visited Sept. 22, 2017). The rating is "possibly carcinogenic to humans." *See also*, King Report, Ex. 2.

[5] U.S. Environmental Protection Agency, *Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate*, 81 Fed. Reg. 33250 (May 25, 2016). The EPA has concluded that the maximum allowable concentration of PFOA and

Plaintiffs and the Class were informed that their drinking water contained dangerous levels of PFCs and were advised to seek alternate drinking water supplies.[7]    As a result, each prospective class member was treated the same by the Defendants and each will rely on the same evidence to establish liability.  Likewise, scientific evidence regarding the toxic effects of PFOA and PFOS will be identical for each class member.  Absent class certification, many of the aggrieved would lack the ability to represent themselves, belying the very purpose for collaborative class efforts to redress their claims.

### A.    The Plaintiffs

1.    Plaintiffs George Bain and Kristy Raub currently reside at 2313 Cactus Drive, Colorado Springs, CO 80911. They own the property and receive water from a municipal well owned by the Security Water and Sanitation District.

2.    Plaintiffs Deanne Lopez and Raymond Lopez currently reside at 776 Kisker Court, Colorado Springs, CO 80911. They own the property and receive water from a municipal well owned by the Security Water and Sanitation District.

3.    Plaintiffs John Francis and Rose Francis currently reside at 4040 Sinnes Drive, Colorado Springs, CO 80911. They own the property and receive water from a municipal well owned by the Security Water and Sanitation District.

4.    Plaintiffs Raymond Betzler and Antionette Betzler currently reside at 161 Kilgore Street, Colorado Springs, CO 80911. They own the property and receive water from a municipal well owned by the Widefield Water and Sanitation District.

5.    Plaintiffs Christopher Pandolfi and Tina Pandolfi currently reside at 465 Cielo Vista Street, Colorado Springs, CO 80911. They own the property and receive water from a

---

PFOS in drinking water is 70 parts per trillion (ppt), and the Colorado Department of Health and Environment is considering its own state limit on PFCs. *See* Bruce Finley, *Colorado mulls state limit for groundwater contamination from PFCs*, The Denver Post (Sept. 17, 2017, 8:18 PM), http://www.denverpost.com/2017/09/17/colorado-state-limit-pfcs-contamination-groundwater/.

[6] In November 2016, the U.S. Army Corps of Engineers issued its *Revised Final Preliminary Assessment Report for Perfluorinated Compounds at Peterson Air Force Base El Paso County, Colorado*, confirming that the use of AFFF at Peterson Air Force Base was a possible source of PFC contamination in the groundwater supply. *See supra*, note 2.

[7] Colorado Dept. of Public Health & Environment, *EPA issues new Perfluorinated compounds health advisory* (May 19, 2016), https://www.colorado.gov/pacific/cdphe/news/EPA-PFC-advisory.

municipal well owned by the Widefield Water and Sanitation District.

6.       Plaintiffs Suzanne Hernandez and Santiago Hernandez currently reside at 6958 Metropolitan Street, Colorado Springs, CO 80911. They own the property and receive water from a municipal well owned by the Widefield Water and Sanitation District.

7.       Plaintiffs Dwight Barstad and Judy Barstad currently reside at 7555 Sunny View Lane, Colorado Springs, CO 80911. They own the property and receive water from a municipal well owned by the Widefield Water and Sanitation District.

8.       Plaintiff Yvonne Strachan currently resides at 7192 Cliffrose Drive, Colorado Springs, CO 80911. She owns the property and receives water from a municipal well owned by the Widefield Water and Sanitation District.

9.       Plaintiffs Lorencio Atchley and Patricia Atchley currently reside at 8102 Silver Glen Drive, Fountain, CO 80817. They own the property and receive water from a municipal well owned by the Fountain Water District.

10.       Plaintiff Mark Trujilo currently resides at 253 N. Vine Street, Colorado Springs, CO 80817. He rents his apartment and receives water from a municipal well owned by the Fountain Water District.

11.       Plaintiff Carol Flathers currently resides at 11945 Orleans Road, Fountain, CO 80817.  She owns the property and is supplied with water from a private well.

## II.       THE CLASS ACTION WAS FILED TO PROTECT AFFECTED RESIDENTS AND PROPERTY OWNERS

This suit was commenced on September 22, 2016 (originally *Davis et al. v. The 3M Corporation et al.* 1:16-cv-02394) by certain class representatives, on behalf of those similarly situated potential class members harmed by PFOA and PFOS groundwater contamination as a result of the use and disposal of AFFF manufactured by Defendants. Subsequently, *Davis* was consolidated with *Bell et al. v. The 3M Company et al.,* 1:16-cv-02351 and *Bell et al. v. The 3M Company, et al.*, 1:16-02352, on June 8, 2017, to the lowest case number: *Bell et al. v. The 3M Company et al.,* 1:16-cv-02351. [D.E. 57]. A Consolidated Class Action Complaint is filed contemporaneously with this Motion on September 22, 2017, and asserts claims under Colorado law based on negligence, medical monitoring, and strict product liability, and seeks monetary and injunctive relief. Class certification is sought on behalf of all prospective Class

Members who fall into either or both of the following classes or subclasses:

    **A.**    **Medical Monitoring Class:** Residents living within the boundaries defined in Attachments U and T of the Rosenfeld Report (Ex. 1) who received water from either the municipal water supplies of the City of Fountain, Security Water and Sanitation District, or the Widefield Water and Sanitation District, or private wells in the CDPHE investigation areas ("Medical Monitoring Class"). This Class comprises the following subclasses:

        **1.**    **Fountain Water District Subclass**: Residents who received water provided by the City of Fountain;

        **2.**    **Security Water District Subclass**: Residents who received water provided by the Security Water and Sanitation District;

        **3.**    **Widefield Water District Subclass**: Residents who received water provided by the Widefield Water and Sanitation District; and

        **4.**    **Private Well Water Subclass:** Residents who received water supplied by private wells within the CDPHE investigative areas.

    **B.**    **Property Damage Class:** Individuals who own real property in areas serviced by the three water districts, Fountain, Security, and Widefield, and those who have private wells in the CDPHE investigative areas ("Property Damage Class"). This class can be readily ascertained by U.S. Census data, property records, and county records.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure Rule 23(a) sets forth the prerequisites to class certification. Under 23(a), the party seeking class certification must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to satisfying the requirements of Rule 23(a), the party seeking certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569

U.S. 27, 33 (2013).

As outlined herein, Plaintiffs seek certification under Rule 23(b)(3) for both the Medical Monitoring Class and Property Damage Class. Rule 23(b)(3) requires the court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In the alternative, Plaintiffs seek certification under Rule 23(b)(2) for the Medical Monitoring Class. Rule 23(b)(2) permits class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs have satisfied all of the requirements of Rule 23(b)(3) and (b)(2) and respectfully request that the Court certify the proposed classes and subclasses.

## IV.    LEGAL ARGUMENT

### A.    The Proposed Classes Are Appropriately Defined and Ascertainable

While not specifically mentioned in Rule 23, "a prerequisite to class certification is an appropriate class definition." *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 394 (D. Colo. 2010) (Blackburn, J.). "'Although the identity of individual class members need not be ascertained before class certification, the membership of the class must be ascertainable.'" *Rhodes v. Olson Assocs., P.C.*, 83 F. Supp. 3d 1096, 1111 (D. Colo. 2015) (Arguello, J.) (quoting Manual For Complex Litigation (Fourth) § 21,222 (2004)). The class description "must be sufficiently definite so that it is administratively feasible for the court to ascertain whether a particular individual is a member." *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635,

639 (D. Colo. 1986) (Kane, J.). Plaintiffs have done so here: the class boundaries are based on currently available PFC sampling data received from the three largest water providers in the Area of Investigation (Security, Widefield, and Fountain) and for residents who obtained drinking water from smaller water systems and domestic wells. *See* Rosenfeld Report, Ex. 1.

### B.    The Proposed Classes Satisfy the Requirements of Rule 23(a)

#### 1.    Numerosity is Satisfied

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is "no set formula to determine if the class is so numerous that it should be so certified." *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978) (Barrett, J.). The inquiry is fact-specific and therefore the district court has wide discretion in making its determination. *See Johnson v. Thompson*, 971 F.2d 1487, 1498 (10th Cir. 1992) (Ebel, J.). Plaintiffs are not required to "identify the exact number of class members involved [and] courts have often used common sense assumptions to support a finding of numerosity." *Ditty v. Check Rite*, 182 F.R.D. 639, 641 (D. Utah 1998).

The number of impacted residents and property owners is estimated to be over 64,000, making individual joinder of class members' claims impracticable. While the exact number of class members is not yet known, a precise number can be ascertained from U.S. Census records, the State of Colorado, the public records of the municipal entities and through other appropriate discovery methods. Accordingly, the numerosity requirement is satisfied.

#### 2.    Questions of Law or Fact Are Common to the Proposed Classes

Rule 23(a)(2) requires there to be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, there need only be "a single

question of law or fact common to the entire class." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010) (Baldock, J.). Plaintiffs meet the requirement by showing a "common contention" that is "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "The claims of the class members need not be identical for there to be commonality; either common questions of law or fact will suffice." *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 551 (D. Colo. 1998) (Kane, J.); *see also Devaughn*, 594 F.3d at 1195 ("Factual differences between class members' claims do not defeat certification where common questions of law exist.").

This case involves numerous questions of law or fact common to Plaintiffs and the Class. Here, the AFFFs manufactured by Defendants are alleged to be responsible for contaminating the municipal and private water supplies. Aquifers within the area exhibit dangerous levels of PFOA and PFOS far exceeding the current EPA health advisory limit of 70 ppt. Exposure to contaminated water has put all residents in the water districts at an increased risk of developing serious latent illnesses. Additionally, the contamination itself and the stigma associated with the contamination are diminishing property values in Security, Widefield, Fountain, and in the CDPHE groundwater investigation areas. Commonality is further established because Defendants' course of conduct causing this contamination is identical for each proposed Class Member.

This non-exhaustive list of common issues of law or fact further supports commonality:

- Whether Defendants knew or should have known that their AFFF contained persistent, stable, and mobile chemicals that were likely to contaminate groundwater supplies, thereby making AFFF unreasonably dangerous;

- Whether Defendants knew or should have known of the risk of health and environmental harm associated with PFOA and PFOS exposure and failed to warn of such risk;

- Whether Class Members are at an increased risk of adverse health consequences as a result of being exposed to Defendants' AFFFs;

- Whether Property Damage Class Members' property values have declined as a result of the contamination;

- The Defendants' affirmative defense that AFFF was produced pursuant to government contracts and military specifications;

- Whether Defendants are liable under theories of negligence, medical monitoring, or strict product liability; and

- Whether Plaintiffs and the Class are entitled to damages and other monetary and equitable relief, including but not limited to punitive damages.

### a. Common Issues Exist as to Plaintiffs' Remedies

In addition to the issues raised above, further common questions of law or fact are raised by the remedies Plaintiffs seek.

### i. Medical Monitoring

A claim for medical monitoring requires: (1) significant exposure to a hazardous substance through the tortious actions of defendant; (2) an increased risk of contracting a serious latent disease as a result of exposure; (3) increased risk makes periodic diagnostic medical examinations reasonably necessary; and (4) procedures exist which make the early detection and treatment of the disease possible and beneficial. *See Cook v. Rockwell International Corp.*, 755 F. Supp. 1468, 1477 (D. Colo. 1991) (Babcock, J.) (citing *In re Paoli R. Yard PCB Litig.*, 916 F.2d 829, 852 (3d Cir. 1990)). In enunciating this cause of action, the court concluded "the Colorado Supreme Court would probably recognize, in an appropriate case, a tort claim for

medical monitoring." *Id.* at 1477.[8]

Certification of the Medical Monitoring Class will enable presentation of common evidence concerning:

- Water distribution systems for each district;

- Levels of PFOA and PFOS detected in the municipal and private water supply;

- Elevated levels of PFOA and PFOS in Plaintiffs' bloodstream; and

- The contours of a medical monitoring program designed to detect and treat the serious latent diseases associated with PFOA and PFOS exposure.

Medical monitoring programs are an effective and appropriate remedy in class action lawsuits involving environmental contamination.[9] Indeed, courts have certified medical monitoring classes in toxic exposure cases where, as here, thousands of persons have been exposed to the same contamination, and it makes sense to address questions regarding the group as a whole.[10] As described by James P. Kornberg, M.D., Sc.D., the proposed Tri-City

---

[8] In 1993, the court certified the medical monitoring class under Rule 23(b)(2) and the property damage class under Rule 23(b)(3). *Cook v. Rockwell Int'l Corp.* (*Cook* IV), 151 F.R.D. 378, 388-89 (D. Colo. 1993). In 1998, when the court readdressed class certification in *Cook v. Rockwell Int'l Corp.*, (*Cook* VII), the court maintained class certification for the property damage class but decertified the medical monitoring class on the grounds that the relief requested was not injunctive. 181 F.R.D. 473, 480-82 (D. Colo. 1998). Notably, the court did not analyze the medical monitoring class under Rule 23(b)(3). *Id.* at 480 ("Because I decertify the medical monitoring class, I consider whether the requirements of Rules 23(a) and (b)(3) are still met with regard only to the Property Class.").

[9] *See* Robert Wones et al., *Medical Monitoring: A Beneficial Remedy for Residents Living Near an Environmental Hazard Site*, 51 J. Occupational Envtl. Med. 12, 1374-1383 (December 2009).

[10] *See Day v. NLO, Inc.* 144 F.R.D. 330 (S.D. Ohio June 22, 1992) (granting medical monitoring class for exposure to radioactive and hazardous materials); *Elliott v. Chicago Hous. Auth.*, 2000 U.S. Dist. LEXIS 2697 (N. D. Ill. 2000) (approving of medical monitoring fund to test and detect lead poisoning); *Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705, 713 (D. Ariz. 1993) (certifying medical monitoring class where plaintiffs were exposed to contaminated groundwater); *Perrine v. E.I. Du Ponte Nemours and Company*, 694 S.E.2d 815 (W. Va. 2010) (class certified for medical monitoring regarding exposure to zinc smelter). Courts have certified medical monitoring classes for more than thirty years. *See, e.g.*, *In re Three Mile Island Litig.*, 557 F.

Medical Monitoring Program[11] for the instant case is designed for exposed persons who resided or currently reside in and around Security, Widefield and Fountain, Colorado.

### ii.     Diminution in Property Value

Plaintiffs also seek class certification for the diminution in property values as a result of the contamination, including damages from the stigma associated with PFOA and PFOS contamination. Whether contamination harmed the Property Damage Class is a core matter in this litigation that will be identical as to each Property Damage Class Member. Certification of the Property Damage Class will enable presentation of common proof regarding:

- The contamination of water supplied to residents in the Fountain, Security, and Widefield water districts, and in the CDPHE groundwater investigation areas;

- The geographical zone of contamination identified by Dr. Paul Rosenfeld;

- Groundwater well testing demonstrating elevated concentrations of PFCs;

- Warnings received by residents that their household water was contaminated with dangerous levels of PFCs and to seek alternate sources of water;

- Whether PFOA and PFOS contamination unreasonably interfered with the use and enjoyment of their property and caused property values to decline; and

- The negative stigma associated with contaminated properties in the Fountain, Security and Widefield water districts, and in the CDPHE groundwater investigation areas.

While the amount of loss may vary among Property Damage Class Members, the methodology for calculating the loss is common to all. The methodology outlined by Plaintiffs' expert economist Patricia Pacey, Ph.D., further supports certification. Dr. Pacey proposes a regression analysis methodology by which the diminution in value for class residences can be calculated in an efficient manner that will yield reliable statically significant

---

Supp. 96 (M.D. Pa. 1982) (class certified for medical monitoring).

[11] *See* Ex. 1, Rosenfeld Report, Attachment V (Kornberg Report), Tri-City Medical Monitoring Program.

results.[12] For the above reasons, the commonality requirement is satisfied.[13]

### 3. The Proposed Plaintiffs' Claims Are Typical

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defense of the class." Fed. R. Civ. P. 23(a)(3). In the Tenth Circuit, "typicality exists where . . . all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *Devaughn*, 594 F.3d at 1199. Typicality exists if "there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class." *Schwartz*, 178 F.R.D. at 551. "Typicality ensures that the class representative's claims resemble the class's claims to an extent that adequate representation can be expected." *In re Intelcom Group, Inc. v. Secs. Litig.*, 169 F.R.D. 142, 149 (D. Colo. 1996) (Daniel, J.) (citation omitted).

Here, Plaintiffs' claims arise from the same course of conduct by Defendants. Representatives of the Medical Monitoring Class, like all residents of the three water districts who consumed contaminated water, have been exposed to dangerous levels of PFOA and PFOS, thereby increasing their risk of developing serious latent diseases. Similarly, members of the Property Damage Class have suffered a loss in property value as a result of contamination caused by Defendant's conduct and product. The typicality requirement is satisfied.

---

[12] *See* Ex. 3, September 22, 2017 Report of Patricia L. Pacey, Ph.D.

[13] *See also Jackson v. Unocal Corp.*, 262 P.3d 874, 890 (Colo. 2011) (affirming trial court's identification of "diminution in value of class members' properties as a result of asbestos contamination" as question common to all class members); *Kathleen Janes et al. v. Ciba-Geigy Corp.*, 2002 WL 34413728 (N.J. Sup. Ct 2002) (unpublished) (certifying property class claims asserting property devaluation resulting from contamination and defendants' failure to disclose its dangers and finding "Property damage cases are generally seen to raise common questions sufficient to warrant class treatment").

### 4. The Proposed Plaintiffs Will Fairly and Adequately Protect the Interests of the Classes

Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation depends on resolution of two questions: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rhodes v. Olson Assocs., P.C.*, 83 F.Supp.3d 1096, 1114 (D. Colo. 2015) (Arguello, J.) (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002)). Rule 23(a)(4) is satisfied "if the plaintiff has common interests with the class and will vigorously prosecute the interests of the class through qualified counsel." *Schwartz*, 178 F.R.D. at 553.

Here, Plaintiffs will serve as fair and adequate class representatives. Neither Plaintiffs' interests nor the interests of their counsel conflict with the interests of the class they seek to represent. Plaintiffs are vigorously prosecuting their actions, have hired experienced counsel, and are willing and able to protect the interests of the Class. Class counsel are qualified and able to conduct the litigation on behalf of the Classes, have substantial experience in complex litigation, class action litigation, and environmental tort litigation, and have the resources necessary to prosecute this case. The adequacy requirement is satisfied.

### C. The Proposed Classes Satisfy the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.    Common Issues Predominate

The "'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The question of liability is the focus of the predominance inquiry. *Maez*, 268 F.R.D. at 397. "[I]f the liability issue is common to the class, common questions are held to predominate over individual questions." *Id.* (citation omitted). "In determining whether common issues predominate, many courts look to whether a 'common nucleus of operative facts' exists." *Joseph*, 109 F.R.D. at 641 (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968)). In the instant case, the core issue is the Defendants' conduct in manufacturing and selling AFFFs, which is uniform towards all members of the Class. When presented with similar facts, other courts have found the predominance inquiry met.[14]

### 2.    Class Treatment is Superior

The superiority component of Rule 23(b)(3) requires that the class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To determine whether a class action is superior, a court should analyze four factors: "(a) the class members' interest in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties

---

[14] *See, e.g., Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 487 (S.D. Ohio 2004) (finding that common questions predominated over individual questions and citing to factually similar cases of alleged soil and groundwater contamination where "the courts determined that common issues predominated and certified classes under 23(b)(3).").

in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also In re Oppenheimer Rochester Funds Group Sec. Litig.*, 318 F.R.D. 435, 449-50 (D. Colo. 2015) (Kane, J.) (recognizing that courts consider these four factors to make the determination about superiority).

A class action is superior for the fair and efficient adjudication of this case. There are common issues utilizing complex common evidence, and core issues require significant discovery, scientific inquiry, and expert analysis, which would be economically burdensome for individual plaintiffs. Finally, Plaintiffs and Class Members all reside or own real property in a narrowly defined geographic area in Colorado, and this action will proceed under federal law and the law of only one state – Colorado. Accordingly, the superiority requirement is met.

> **D.**     **The Medical Monitoring Class Satisfies the Requirements of Rule 23(b)(2)**

Should the Court conclude, in the alternative, that the proposed medical monitoring program constitutes injunctive, rather than compensatory, relief, certification of the Medical Monitoring Class is proper under Rule 23(b)(2).[15] Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Defendants' conduct here has been uniform towards all putative class members.

Some courts have held that creating a medical monitoring trust fund is a form of equitable relief (distinct from money damages) because Plaintiffs would not receive direct payment, only the services of the medical monitoring program. *See*, *e.g.*, *Redland Soccer*

---

[15] As discussed in note 8, *see supra*, a medical monitoring class certified under Rule 23(b)(2) was later decertified when the court concluded that the requested relief was not injunctive.

*Club, Inc. v. Dep't of the Army & Dept. of Def. of the U.S.*, 696 A.2d 137, 142 n.6 (Pa. 1997) ("[The court believes] that a medical monitoring trust fund is a more appropriate remedy than lump sum damages in mass exposure toxic tort cases."); *Ayers v. Township of Jackson*, 106 N.J. 557, (1987) ("[T]he use of a court-supervised fund to administer medical-surveillance payments in mass exposure cases. . . is a highly appropriate exercise of the Court's equitable powers.").

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant their Motion.

Dated: September 22, 2017                    By:   /s/ David P. Hersh, Lead Class Counsel

**BURG SIMPSON
ELDREDGE HERSH & JARDINE, P.C.**
David P. Hersh
dhersh@burgsimpson.com
Seth A. Katz
skatz@burgsimpson.com
Meghan C. Quinlivan
mquinlivan@burgsimpson.com
40 Inverness Drive East
Englewood, Colorado 80112
Telephone: 303-792-5595
Fax: 303-708-0527

**NAPOLI SHKOLNIK PLLC**
Paul Napoli
pnapoli@napolilaw.com
Hunter Shkolnik
hunter@napolilaw.com
Louise Caro
lcaro@napolilaw.com
Patrick Lanciotti
planciotti@napolilaw.com
360 Lexington Avenue, Eleventh Floor
New York, New York, 10017
Telephone: (212) 397-1000

16

**MCDIVITT LAW FIRM**
Mike McDivitt
mmcdivitt@mcdivittlaw.com
19 East Cimarron Street
Colorado Springs, Colorado 80903
Telephone: (719) 471-3700

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2017, a true and correct copy of the foregoing Memorandum of Law in Support of Motion for Class Certification was filed using the Court CM/ECF system and thereby serving all counsel of record.

By:   /s/ David P. Hersh, Lead Class Counsel