**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No.: 1:16-cv-02351-RBJ
(consolidated)

GREGORY BELL, et al.,

Plaintiffs,

v.

THE 3M COMPANY(f/k/a Minnesota Mining
and Manufacturing Co.), et al.,

Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

---

## I.    INTRODUCTION

Plaintiffs seek to represent tens of thousands of residents of Fountain, Security, Widefield, and Colorado Springs who were exposed to contaminated drinking water from the City of Fountain, the Security Water and Sanitation District, the Widefield Water and Sanitation District, and private wells,[1] all of which obtain groundwater from the Colorado Department of Public Health & Environment ("CDPHE") Areas of Investigation.[2]  The drinking water has been contaminated with Defendants' Aqueous Film Forming Foam ("AFFF"), which contains

---

[1] Revised Preliminary Report for Class Certification of PFC Contamination of Public Water Systems and Private Wells in the Security, Widefield, and Fountain, Colorado Area, January 24th 2018, prepared by Paul E. Rosenfeld, Ph.D of Soil Water Air Protection Enterprise ("Rosenfeld Revised Preliminary Report"), at 1, Attachment V ("Proposed Class Boundary for Security, Widefield, and Fountain") and Attachment W ("Proposed Class Boundary for Smaller Water Systems and Private Wells"), attached as Exhibit 3.

[2] *Id.* at Attachment L ("CDPHE Perfluorinated Compounds: Latest Observations in Source Water Map").

dangerous levels of perfluorinated compounds ("PFCs") such as perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS").  Plaintiffs respectfully request that the Court certify classes pursuant to Federal Rule of Civil Procedure 23, as set forth herein.  Plaintiffs seek the creation of a medical monitoring program for residents who have consumed contaminated water, placing them at a significantly increased risk of developing serious medical conditions.  Additionally, Plaintiffs seek compensation for real property owners harmed by the contamination's negative impact on property values.

## II.    FACTUAL BACKGROUND

Defendants manufactured, marketed, distributed, and sold AFFF to the United States Department of Defense ("DOD") and United States Air Force ("USAF") for use in firefighting efforts and training exercises.  Beginning in 1970, the USAF used AFFFs at Peterson Air Force Base and Colorado Springs Municipal Airport in Colorado Springs, Colorado ("PAFB").[3]  For decades, Defendants marketed and sold AFFF without adequately warning of the health and environmental hazards associated with the toxic chemicals in AFFF, including their potential to contaminate water supplies, persist in the environment, bioaccumulate, and contribute to the development of serious medical conditions.[4, 5]  As a result of the use and disposal of AFFF at

---

[3] U.S. Army Corps of Eng'rs, *Revised Final Preliminary Assessment Report for Perfluorinated Compounds at Peterson Air Force Base El Paso County, Colorado* (November 2016), http://www.peterson.af.mil/Portals/15/documents/Public%20Notices/552503_Revised%20Final%20Peterson%20AFB%20PA_11_2016.pdf?ver=2017-05-16-162140-693.

[4] U.S. Envtl. Prot. Agency, *Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA)* (May 2016), https://www.epa.gov/sites/production/files/2016-05/documents/pfoa_health_advisory_final-plain.pdf.

[5] Exposure to PFOA/PFOS has been statistically significantly associated with at least six (6) defined adverse medical outcomes ("AMOs").  *See* Updated Report In Support of The Tri-City Medical Monitoring Program, January 25, 2018, Stephen King, Ph.D., M.P.H., attached as Exhibit 5.

PAFB, PFOA and PFOS were released into Plaintiffs' drinking water.[6]  In fact, the USAF itself, "has determined that the use of AFFF at Peterson AFB caused or contributed to the PFOA/PFOS contamination in the community water sources located off-base and downgradient of Peterson AFB."[7]  Further, "[a]ctual or assumed releases of pollutants or contaminants from Peterson AFB may present an endangerment to public health, welfare, or environment.  Based on information collected in the [Preliminary Assessment] and [Site Investigation] and knowledge about groundwater flow, use of AFFF at Peterson AFB has caused or contributed to the presence of PFOA and PFOS detected in [sic] off-base in drinking water supplies (to the south and downgradient of Petersen [sic] AFB) at concentrations greater than the EPA HA levels."[8]

In May of 2016, the United States Environmental Protection Agency ("EPA") established a drinking water health advisory level for PFOA and PFOS and warned that lifetime exposure to PFOA and PFOS over 70 parts per trillion was linked to the development of numerous serious medical conditions.[9]  It was during this time that Plaintiffs and the Class were informed their drinking water contained dangerous levels of PFCs and were advised to seek alternate drinking water supplies.[10]  Each Class Member will rely on the same evidence to establish that Defendants' conduct is directly responsible for the bioaccumulation of PFOA and PFOS in the

---

[6] In November 2016, the U.S. Army Corps of Engineers confirmed that the use of AFFF at PAFB was a possible source of PFC contamination in the environment.  *See* U.S. Army Corps, *Revised Preliminary Assessment Report*.

[7] Action Memorandum for a Time-Critical Removal Action of PFC Contaminated Water South of Peterson Air Force Base, Colorado.  Suzanne W. Bilbrey, August 9, 2017, at 6-7.  Attached as Exhibit 2.

[8] *Id.* at 7.

[9] U.S. Envtl. Prot. Agency, *Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate*, 81 Fed. Reg. 33250 (May 25, 2016).

[10] Colorado Dep't of Public Health & Env't, *EPA issues new perfluorinated compounds health advisory* (May 19, 2016), https://www.colorado.gov/pacific/cdphe/news/EPA-PFC-advisory.

Plaintiffs[11] as well as the negative impacts on Plaintiffs' property values.   Absent class

certification, the Court will be required to individually adjudicate issues common to the

thousands of residents who have sustained damage to their health and property.

## III.   THE CLASS ACTION WAS FILED TO PROTECT AFFECTED RESIDENTS AND PROPERTY OWNERS

On December 8, 2017, Plaintiffs filed the Second Amended Class Complaint, asserting

claims under Colorado law based on negligence, medical monitoring, strict products liability,

and civil conspiracy seeking monetary and injunctive relief.   Class certification is sought on

behalf of prospective Class Members who fall into either or both of the following classes or sub-

classes:

**A.**   **Medical Monitoring Class:** Individuals who received water provided by their

municipal water supplier, smaller water systems, or domestic water supply wells in the CDPHE

Areas of Investigation.   This Class is composed of the following sub-classes:

1.      All individuals who reside or resided within the CDPHE Areas of Investigation who received water provided by the Security Water and Sanitation District (the "Security Water Sub-Class");[12]

2.      All individuals who reside or resided within the CDPHE Areas of Investigation who received water provided by the Widefield Water and Sanitation District (the "Widefield Water Sub-Class");[13]

---

[11] *See, e.g.,* Ex. 3, Rosenfeld Revised Preliminary Report; Rosenfeld Supplemental Report for Class Certification of PFC Contamination of Public Water Systems and Private Wells in the Security, Widefield, and Fountain, Colorado Area, January 24 2018, prepared by Paul E. Rosenfeld, Ph.D of Soil Water Air Protection Enterprise ("Rosenfeld Supplemental Report"), attached as Exhibit 1.

[12] Security pressure zones S_1, S_2, and S_3 had significantly elevated exposure point concentrations of PFOA and PFOS in drinking water.  Ex. 1, Rosenfeld Supplemental Report at 11, 18, and Attachment K ("Preliminary Exposure Point Concentration Calculations for Security Water & Sanitation District").

[13] Widefield pressure zones W_1, W_2, and W_3 had significantly elevated exposure point concentrations of PFOA and PFOS in drinking water.  Ex. 1, Rosenfeld Supplemental Report at

3.      All individuals who reside or resided within the CDPHE Areas of Investigation who received water provided by the City of Fountain Utilities Department (the "Fountain Water Sub-Class"); [14] and

4.      All individuals who reside or resided within the CDPHE Areas of Investigation who received water from smaller water systems or domestic water supply wells (the "Private Water Sub-Class"). [15]

**B.      Property Damage Class:**  Individuals who own real property in the CDPHE Areas of Investigation serviced by the three water districts, Fountain, Security, and Widefield, or those who have private water wells in the CDPHE Areas of Investigation.  This class can be readily ascertained by U.S. Census data, property records, and county records.

## IV.     LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 23(a), the party seeking class certification must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Under Rule 23(b)(3), the party seeking certification must prove common issues predominate over issues affecting

---

11-12, 18, and Attachment L ("Preliminary Exposure Point Concentration Calculations for Widefield Water & Sanitation District").

[14] Fountain pressure zones F_High, F_Cumberland Green, and F_Little Ranches had significantly elevated exposure point concentrations of PFOA and PFOS in drinking water. Ex. 2, Rosenfeld Supplemental Report at 12-14, 18, and Attachment M ("Preliminary Exposure Point Concentration Calculations for City of Fountain Water Department").

[15] Small water systems and private wells in the CDPHE's Area of Investigation have been found to have significantly elevated concentrations of PFOA/PFOS based on limited water sampling. Some wells located more than seven (7) miles south of Fountain have PFOA/PFOS concentrations exceeding the EPA's Provisional Health Advisory level.  Ex. 1, Rosenfeld Supplemental Report at 14-15.

5

individual members and that the class action vehicle is the superior method of adjudication. Under Rule 23(b)(2), the party seeking certification must request injunctive relief to remedy conduct that applies generally to the class as a whole. Plaintiffs seek certification under Rule 23(b)(3) for the Property Damage Class. Plaintiffs seek certification for the Medical Monitoring Class under Rule 23(b)(3) or, in the alternative, under Rule 23(b)(2). Plaintiffs have satisfied the requirements of Rules 23(a), (b)(3), and (b)(2) and respectfully request that the Court certify the proposed classes and sub-classes.

## V.   LEGAL ARGUMENT

### A.   The Proposed Classes Are Appropriately Defined and Ascertainable.

To certify a class, the class must be appropriately defined.[16]   "Although the identity of individual class members need not be ascertained before class certification,"[17]   the class description "must be sufficiently definite so that it is administratively feasible for the court to ascertain whether a particular individual is a member."[18]  The Plaintiffs have defined the class boundaries using PFC sampling data received from the three largest water providers in the Area of Investigation (Security, Widefield, and Fountain) and fate/transport modeling on the extent of the contamination.[19]  Therefore, the Court can easily ascertain members of the proposed classes.

### B.   The Proposed Classes Satisfy the Requirements of Rule 23(a).

#### 1.   The Proposed Classes Are So Numerous that Joinder of All Members Is Impracticable.

As the numerosity inquiry is fact-specific, courts are afforded substantial deference when

---

[16] *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 394 (D. Colo. 2010) (Blackburn, J.).

[17] *Rhodes v. Olson Assocs., P.C.*, 83 F. Supp. 3d 1096, 1111 (D. Colo. 2015) (Arguello, J.) (quoting Manual For Complex Litigation (Fourth) § 21,222 (2004)).

[18] *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 639 (D. Colo. 1986) (Kane, J.).

[19] *See* Ex.1, Rosenfeld Supplemental Report, at 2.

making this determination.[20]  Plaintiffs are not required to "identify the exact number of class members involved [and] courts have often used common sense assumptions to support a finding of numerosity."[21]  While the exact number of Class Members is not yet known, a precise number is easily ascertainable from U.S. Census records, the State of Colorado, public records of municipal entities, and through other appropriate discovery methods.  Given the large number of impacted individuals, the numerosity requirement is satisfied.

### 2.   Questions of Law or Fact Are Common to the Proposed Classes.

To satisfy Rule 23(a)(2) commonality, there need only be "a single question of law or fact common to the entire class."[22]  "The claims of the class members need not be identical for there to be commonality; either common questions of law or fact will suffice."[23]  Plaintiffs can meet the requirement by showing a "common contention" that is "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[24]  Aquifers within the area exhibit levels of PFOA and PFOS in excess of the current EPA health advisory limit of 70 ppt.  Exposure to contaminated water has put all residents in the water districts at a significantly increased risk of developing serious medical conditions.  Additionally, the contamination is negatively impacting property values in these communities.  The resolution of the following non-exhaustive list of

---

[20] *See Johnson v. Thompson*, 971 F.2d 1487, 1498 (10th Cir. 1992) (Ebel, J.) (citing *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978)) (reviewing the numerosity inquiry under an "abuse of discretion" standard).

[21] *Ditty v. Check Rite*, 182 F.R.D. 639, 641 (D. Utah 1998).

[22] *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010) (Baldock, J.).

[23] *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 551 (D. Colo. 1998) (Kane, J.); *see also Devaughn*, 594 F.3d at 1195 ("Factual differences between class members' claims do not defeat certification where common questions of law exist.").

[24] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 388, 350 (2011).

7

common legal and factual issues further supports commonality:

- Whether Defendants knew or should have known that AFFF contained persistent, stable, and mobile chemicals that were likely to contaminate groundwater supplies, thereby making AFFF unreasonably dangerous;

- Whether Defendants knew or should have known of the risk of health and environmental harm associated with PFOA and PFOS exposure and failed to warn of such risk;

- Whether exposure to PFOA and PFOA from Defendants' AFFFs places Class Members at an increased risk of developing serious medical conditions;

- Whether contamination has negatively impacted Property Damage Class Members' property values;

- Whether Defendants are liable under theories of negligence, medical monitoring, strict products liability, or civil conspiracy;

- Whether Defendants are entitled to the government contractor affirmative defense; and

- Whether Plaintiffs and the Class are entitled to monetary damages or equitable relief, including but not limited to punitive damages.

### a.   Common Issues Exist Regarding Medical Monitoring.

In Colorado, a medical monitoring claim requires proof of the following elements: (1) Plaintiff was significantly exposed to a proven hazardous substance through the tortious actions of defendant; (2) As a proximate result of exposure, plaintiff suffers an increased risk of contracting a serious latent disease; (3) That increased risk makes periodic diagnostic medical examinations reasonably necessary; and (4) Monitoring and testing procedures exist which make the early detection and treatment of the disease possible and beneficial.[25]   Though the Colorado Supreme Court has not addressed the issue, this Court has previously concluded, "the Colorado Supreme Court would probably recognize, in an appropriate case, a tort claim for medical monitoring."[26]   Certifying the Medical Monitoring Class will enable presentation of common

---

[25] *See Cook v. Rockwell International Corp.*, 755 F. Supp. 1468, 1477 (D. Colo. 1991) (Babcock, J.) (citing *In re Paoli R. Yard PCB Litig.*, 916 F.2d 829, 852 (3d Cir. 1990)).
[26] *Id.* at 1477.

evidence concerning the elements of the claim above, each of which will involve findings related to:

- The water distribution systems for each district;
- The levels of PFOA and PFOS detected in the municipal and private water supplies;
- The elevated levels of PFOA and PFOS in Plaintiffs' bloodstream; and
- The contours of a medical monitoring program designed to detect and treat the serious medical conditions associated with PFOA and PFOS bioaccumulation.

Medical monitoring programs have been long-recognized[27] as an appropriate remedy in class action lawsuits involving environmental contamination.[28]   Indeed, courts have certified medical monitoring classes in toxic exposure cases where, as here, thousands of persons have been exposed to the same contamination and a court can address questions affecting the entire class.[29]   As described by James P. Kornberg, M.D., Sc.D., the proposed Tri-City Medical Monitoring Program[30] is designed to monitor exposed persons who resided or currently reside in and around Security, Widefield, and Fountain, Colorado.

### b.   Common Issues Exist Regarding Negatively Impacted Property Values.

Plaintiffs also seek class certification for the contamination's negative impact to property values.  Whether contamination negatively impacted the Property Damage Class' property values

---

[27] For over thirty years, courts have certified medical monitoring classes in environmental class action litigation. *See, e.g.*, *In re Three Mile Island Litig.*, 557 F. Supp. 96 (M.D. Pa. 1982).

[28] *See* Robert Wones et al., *Medical Monitoring: A Beneficial Remedy for Residents Living Near an Envtl. Hazard Site*, 51 J. Occupational Envtl. Med. 12, 1374-1383 (December 2009).

[29] *See, e.g.*, *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 22 (D. Mass. 2010) (collecting cases).

[30] *See* Ex. 3, Rosenfeld Revised Report at Attachment X ("Rationale for Development of Tri-City Medical Monitoring Program"); First Supplement, Rationale for Development of Tri-City Medical Monitoring Program, James P. Kornberg, January 26, 2018, attached as Exhibit 6.

is central in this litigation and will be identical for each Property Damage Class Member.[31]

Certification of the Property Damage Class will enable presentation of common proof regarding:

- The contamination of water supplied to residents in the Fountain, Security, and Widefield water districts, and in the CDPHE groundwater investigation areas;

- The geographical zone of contamination identified by Dr. Paul Rosenfeld;

- Groundwater well testing demonstrating elevated concentrations of PFCs;

- Warnings received by residents that their household water was contaminated with dangerous levels of PFCs and to seek alternate sources of water;

- Whether PFOA and PFOS contamination negatively impacted property values; and

- The negative stigma associated with contaminated properties in the Fountain, Security, and Widefield water districts, and in the CDPHE groundwater investigation areas.

While the negative impacts may vary among individual Class Members, the methodology for calculating the impact can be based on class-wide proof.[32]   Therefore, commonality is satisfied.

### 3.     The Plaintiffs' Claims Are Typical of the Classes' Claims or Defenses.

In the Tenth Circuit, typicality of claims or defenses "exists where . . . all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."[33]   While the named plaintiffs and potential class members do not need to be identically positioned, "there [must be] a nexus between the class representatives' claims or

---

[31] Class wide effects of contamination on property value can reasonably and reliably be established through methodologies including matched pairs analysis and statistical analysis.  *See* Report of William M. James, MAI, Methodology for Determination of the Effect on Market Value of Real Properties Resulting from Contamination of Water – Fountain Creek Water Shed, attached as Exhibit 4.

[32] *See Jackson v. Unocal Corp.,* 262 P.3d 874, 890 (Colo. 2011) (affirming trial court's identification of "diminution in value of class members' properties as a result of asbestos contamination" as question common to all class members).

[33] *Devaughn*, 594 F.3d at 1199 (finding typicality exists where the harm or threat of harm suffered by named Plaintiffs is typical of the harm or threat of harm for all members in the class).

defenses and the common questions of fact or law which unite the class."[34]   The Class Representatives' claims are premised on the Defendants' manufacture, sale, and distribution of AFFF to the USAF and PAFB.  Issues surrounding efficacy, safety, and warnings provided with AFFF, and the effects of contaminated groundwater on health and property, link the claims asserted to questions of law and fact common to the entire class.  Medical Monitoring Class Representatives, like all individuals who have consumed contaminated water from the three water districts and private wells, have been exposed to dangerous levels of PFOA and PFOS and suffer from an increased risk of developing serious medical conditions.[35]   Similarly, Property Damage Class Representatives, like all property owners residing within the zone of contamination, have been negatively impacted due to the contamination caused by Defendants' conduct.

### 4.     The Plaintiffs Will Fairly and Adequately Protect Class Interests.

Fair and adequate representation of the Classes' interests depends on resolution of two questions: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"[36]   Neither Plaintiffs' interests nor the interests of counsel conflict with the interests of the class they seek to represent.  Class counsel are qualified and able to conduct the litigation on behalf of the Classes, have substantial experience in complex, class action, and environmental tort litigation, and have the resources necessary to vigorously prosecute this case. Therefore, Plaintiffs will fairly and adequately protect class interests.

---

[34] *Schwartz*, 178 F.R.D. at 551.

[35] Ex. 1, Rosenfeld Supplemental Report at 15-16.

[36] *Rhodes v. Olson Assocs., P.C.*, 83 F.Supp.3d 1096, 1114 (D. Colo. 2015) (Arguello, J.) (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002)).

### C.      The Proposed Classes Satisfy the Requirements of Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[37]

### 1.      Common Issues Predominate

The Rule 23(b)(3) "'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[38]  The question of liability is the focus of the predominance inquiry.[39]  In addressing environmental mass torts, the District of Colorado has approvingly cited the analysis adopted by the Sixth Circuit whereby a court can certify a class based on common issues surrounding Defendants' liability, even if issues surrounding individualized damages remain.[40]  "The mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible."[41]  Specifically with regard to medical monitoring, the District of Colorado has never analyzed the propriety of

---

[37] Fed. R. Civ. P. 23(b)(3).

[38] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

[39] *Maez*, 268 F.R.D. at 397.

[40] *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 604 (D. Colo. 1990) (quoting *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1196) ("'In mass tort accidents, the factual and legal issues of a defendant's liability do not differ dramatically from one plaintiff to the next.  No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action.  Consequently, the mere fact that questions peculiar to each member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.'").

[41] *Clark v. State Farm Mut. Auto Ins. Co.*, 245 F.R.D. 478, 488 (D. Colo. 2007) (quotations omitted) (quoting *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)) (finding that even if each individual plaintiff's damages require a separate inquiry, common questions of law or fact may predominate).

certifying a medical monitoring class under Rule 23(b)(3).[42]  Here, the core issue for both classes

is whether Defendants are liable for the harms from the manufacture, distribution, and sale of

AFFF to PAFB.[43]  When presented with similar facts, other courts have found the predominance

inquiry met.[44]

### 2.    Class Treatment is Superior

The Rule 23(b)(3) superiority inquiry requires that the class action be "superior to other

available methods for fairly and efficiently adjudicating the controversy," and analyzes: "(a) the

class members' interest in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already begun by or against

class members; (c) the desirability or undesirability of concentrating the litigation of the claims

in the particular forum; and (d) the likely difficulties in managing a class action."[45]  This case,

the only current case addressing the contamination in these communities, involves issues

common to all class members.  If cases were individually adjudicated, the discovery and expert

analysis would be duplicative and wasteful of judicial resources.  As Class Members all reside or

---

[42] *See Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 480-82 (D. Colo. 1998) ("Because [the Court] decertifies the medical monitoring class, [the Court] consider[s] whether the requirements of Rule 23(a) and (b)(3) are still met with regard only to the Property Class").

[43] For example, a thorough analysis of industry leader The 3M Company details research 3M performed beginning in the late 1940s on the properties of PFCs, including reactivity, stability, solubility, and effects on the environment, animals and people.  *See* Expert Report of Kirk W. Brown,  Exhibit 76 to Memorandum in Support of State of Minnesota's Motion to Amend Complaint, at 6-10 and 17-25,  *State of Minnesota, et al. v. 3M Company*, 2016 Minn. Dist. LEXIS 1 (No. 27-cv-10-28862),  attached as Exhibit 7.  In addition, 3M has openly admitted that it is the only known manufacturer of PFOS in the United States to the California Office of Environmental Heath Hazard Assessment.  *See* 3M Company Recommendation Regarding Prioritization of PFOS for Consideration under Proposition 65, October 14, 2015, attached as Exhibit 8.  These facts address 3M's liability as to all class plaintiffs.

[44] *See, e.g., Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 487 (S.D. Ohio 2004) (following *Sterling* and finding that common issues predominated over individualized issues of damages).

[45] *Id.*

own real property in a concretely defined area in Colorado, this Court can conduct proceedings under federal law and the law of only one state – Colorado. Accordingly, the superiority requirement is met.

### D. The Medical Monitoring Class Satisfies the Requirements of Rule 23(b)(2).

In the alternative, certification of the Medical Monitoring Class is proper under Rule 23(b)(2).[46] Creating a medical monitoring trust fund is a form of equitable relief because Plaintiffs would only receive the services of the medical monitoring program.[47] Rather than tailor specific remedies based on individual circumstances or characteristics of class members,[48] Plaintiffs' medical monitoring program can be applied without differentiating between members. Where Plaintiffs solely request services to be applied uniformly to all Class Members, a medical monitoring class should be certified.[49]

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant their Motion.

Dated: January 26, 2018                    Respectfully Submitted,

                                                                  **NAPOLI SHKOLNIK, PLLC**

---

[46] Fed. R. Civ. P. 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

[47] *See Donovan*, 268 F.R.D. at 22 (finding relief to be injunctive where plaintiffs sought "a structured program, monitored by and staffed with medical personnel, in which class members will receive regular medical screenings. To effectuate the program, plaintiffs would have to hire medical and administrative personnel, purchase equipment, and establish procedures for intake, informed consent, record keeping, and so on.").

[48] *Shook v. Bd. of County Comm'rs*, 543 F.3d 597, 604 (10th Cir. 2008).

[49] *Boughton v. Cotter*, 65 F.3d 823, 827 (10th Cir. 1995) (holding that medical monitoring claims, if not primarily a request for monetary damages, are a request for injunctive relief and "certification of a class under such circumstances [would be] legally permissible under Rule 23(b)(2) . . .").

/s/Louise R. Caro
Paul J. Napoli
Hunter Shkolnik
Louise Caro
Tate J. Kunkle
Patrick J. Lanciotti
360 Lexington Avenue, Eleventh Floor
New York, NY 10017
Telephone: (212) 397-1000
E-mail: pnapoli@napolilaw.com
E-mail: hunter@napolilaw.com
E-mail: lcaro@napolilaw.com
E-mail: tkunkle@napolilaw.com
E-mail: planciotti@napolilaw.com

*Liaison Counsel for Plaintiffs and the Putative Classes*

**BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C.**
David P. Hersh
Seth A. Katz
Meghan C. Quinlivan
D. Dean Batchelder
Kirsten N. Kube
Lewis A. Osterman
40 Inverness Drive East
Englewood, CO 80112
Telephone: (303) 792-5595
Facsimile: (303) 708-0527
E-mail: dhersh@burgsimpson.com
E-mail: skatz@burgsimpson.com
E-mail: mquinlivan@burgsimpson.com
E-mail: dbatchelder@burgsimpson.com
E-mail: kkube@burgsimpson.com
E-mail: losterman@burgsimpson.com

*Lead Counsel for Plaintiffs and the Putative Classes*

**MCDIVITT LAW FIRM**
Michael McDivitt
Anthony D. Tracy
Leah C. Garrett

19 East Cimarron Street
Colorado Springs, CO 80903
Telephone: (719) 471-3700
E-mail: mmcdivitt@mcdivittlaw.com
E-mail: ttracy@mcdivittlaw.com
E-mail: lgarrett@mcdivittlaw.com

*Attorneys for Plaintiffs and the Putative Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2018, a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** was filed using the Court CM/ECF system and thereby serving all counsel of record.

*/s/* Patrick J. Lanciotti