IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 16-cv-02351-RBJ
*Consolidated Cases 16-cv-02394-RBJ and 16-cv-02352-RBJ*

GREGORY BELL,
JOSE ACEVEDO, and
DENISE DURBIN, individually and as parent and next friend of K.D. and B.D.,
for themselves and on behalf of all others similarly situated,

    Plaintiffs,

v.

THE 3M COMPANY f/k/a Minnesota Mining and Manufacturing Co., and
TYCO FIRE PRODUCTS, L.P., successor-in-the interest to The Ansul Company,

    Defendants.

---

## ORDER ON DAUBERT MOTIONS

### BACKGROUND

As noted in a separate order concerning medical monitoring issues also issued today, plaintiffs allege that the defendant companies manufactured Aqueous Film Forming Foam (AFFF) for use at Peterson Air Force Base as a firefighting suppressant, and that this AFFF has contaminated the groundwater in their communities. In their Second Amended Complaint plaintiffs claim to have sustained damage to their property values, and that they either already have developed, or might in the future develop, diseases caused by exposure to the contaminants. Their claims sound in (1) negligence; (2) medical monitoring; (3) products liability for failure to warn; (4) products liability for defective design; and (5) civil conspiracy. *Id.* at 43–57. Plaintiffs seek remedies on both a class-wide and an individual basis including declaratory relief, damages, attorney's fees, costs, and the implementation of a medical monitoring protocol.

1

The Court has scheduled a hearing on class action certification on November 30, 2018. Defendant 3M has filed four motions challenging the relevance or reliability of five plaintiff experts in advance of that hearing. The other defendants have filed seven additional motions joining in the 3M motions.

## RULE 702

Under Rule 702 of the Federal Rules of Evidence, a qualified expert may provide opinion testimony if the evidence is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Expert opinions are **relevant** if they would "help the trier of fact to understand the evidence or to determine a fact in issue." Rule 702(a); *see Daubert*, 509 U.S. at 591. They are **reliable** if the expert is qualified by knowledge, education or experience, and his or her opinions are "scientifically valid" and based on "reasoning or methodology [that] properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 593. Reliability generally focuses on the methodology, not the ultimate conclusions of the expert. *Ho v. Michelin North America, Inc.*, 520 F. Appx. 658, 663 (10th Cir. 2013). Factors useful in this analysis include, but are not limited to, the following:

> (1) whether the opinion at issue is susceptible to testing and has been subject and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.

*Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (citing *Daubert,* 509 U.S. at 593–94).

The proponent of expert testimony has the burden to show that the testimony is admissible. *U.S. v. Nacchio*, 555 F. 3d 1234, 1241 (10th Cir. 2009). The trial court plays a "gatekeeping" role that involves an assessment of the "reasoning and methodology underlying

the expert's opinion" and a determination of "whether it is scientifically valid and applicable to a particular set of facts."  *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).  However, the trial court has discretion as to how to perform this gatekeeping function.  *Id.*  It is not a role that emphasizes exclusion of expert testimony.  *See Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006).

## FINDINGS AND CONCLUSIONS

Initially, I note that I am addressing these motions preliminary to a class certification hearing, not a trial.  Accordingly, the Court's rulings today should be viewed as "without prejudice" and are provided to assist the parties in preparation for the class certification hearing.

### I.  STEPHEN KING.

Dr. King's two reports consist primarily of (1) references to various articles and (2) conclusory opinions apparently derived from the literature.  The opinions are to the effect that certain diseases have been "associated" with exposure to PFCs.  I do not necessarily question Dr. King's credentials or his ability to shed light on the subject.  However, I do not find that these reports would be helpful in determining a fact in issue.  Accordingly, the motion to exclude the opinions as expressed in the two reports is granted.

### II.  KENNETH SPAETH.

Dr. Spaeth is a medical doctor who is board-certified in Occupational and Environmental Medicine and also has a Master's Degree in Public Health.  He expresses opinions concerning a medical monitoring protocol in the event that medical monitoring is ordered.  Although the opinions are arguably premature in light of the Court's order concerning medical monitoring, the Court finds that he is well qualified by education, training and experience, as detailed in his April 26, 2018 report, ECF No. 252-3 at 3-4, to express them (reliability), and that they would be

helpful in defining such a protocol (relevance). The defendant has pointed to nothing that legitimately calls into question Dr. Spaeth's methodology. The motion to exclude his opinions is denied.

### III. PAUL ROSENFELD and MATT HAGEMANN.

Dr. Rosenfeld, a chemist, and Mr. Hagemann, a geologist, work with an environmental consulting firm called Soil Water Air Protection Enterprise based in Santa Monica, California. Their "Supplemental Report," ECF No. 142-1, provides a "preliminary evaluation" of the source and extent of groundwater contamination allegedly attributable to AFFF use at "the Airfield," which they define to mean the Peterson Air Force Base and the Colorado Springs Municipal Airport. They note throughout their report instances where data is incomplete and is the subject of further investigation. Their preliminary opinion is based on data they have obtained from various cited sources and "mixing" (surface and groundwater) models which they indicate are similar to models used by the U.S. Department of Health and Human Services, Agency for Toxic Substances and Disease Registry in an AFFF-related investigation at another large Air Force Base. *Id.* at 14 (report page 10). They state that "[b]ecause information from Security, Widefield and Fountain has been limited, simple mixing models are the only feasible method for calculating estimated exposure point concentrations at this time." *Id.* at 14-15.

In their concluding section headed "Opinions" Dr. Rosenfeld and Mr. Hagemann state that "the use of AFFF at the Airfield has resulted in significant contamination of the drinking water resources, impacting Security, Widefield, Fountain, as well as small water systems and private wells downgradient of the Airfield." *Id.* at 21 (report p. 17). That broad opinion is then further explained in six additional opinions. *Id.* at 22. In certain of their opinions, however, they appear to go outside their zones of expertise by commenting on literature concerning the

4

relationship of drinking water concentration to levels of contamination in blood serum; analysis of blood data collected from individuals in the Proposed Class Area; and mention of another expert report prepared by Kirk W. Brown which provides evidence that 3M knew that these chemicals were toxic and would not biodegrade. *Id.*

Defendant 3M argues that the opinions are unreliable, in part because they are based on assumptions that concentrations from 2013-2016 are representative of conditions going back to 1990; that PFC's have entered the groundwater at a steady rate; that average PFC concentration for a pressure zone is representative of PFC concentration at individual taps; and that 100 percent of PFOA and PFOS found in these water districts is attributable to the Airfield. ECF No. 255 at 2. Regarding the latter point, the report acknowledges that there are other potential sources, and while they believe it to be likely that the Airfield was the predominant source, the investigation of other sources is ongoing. ECF No. 142-1 at 5. The assumptions can be challenged on cross examination or contrary evidence.

The groundwater opinions are plainly relevant, as the extent to which contamination potentially impacts numerous households is germane to class action issues. Professor Rosenfeld and Mr. Hagemann appear to be qualified by education, training and experience to conduct investigations of the spread of contaminants in groundwater. They have based their preliminary opinions on test data that they have identified and on models that, they say, have been accepted and used elsewhere in the scientific community. I conclude that defendant's challenges go to the weight of the evidence, not whether the Court can consider the opinions in its analysis of the class certification issues.

However, I do not have the same view of the opinions expressed in the report concerning blood concentrations. Plaintiffs have not met their burden of showing that the authors are

5

qualified to express reliable opinions in that area. In addition, these authors cannot be used to introduce what is said to be opinions of Mr. Brown.

**IV. WILLIAM JAMES.**

Mr. James is a real estate appraiser. He no doubt is well qualified to appraise commercial and residential properties. However, plaintiffs have asked him to "provide an opinion about the availability of a uniform methodology to determine on a class wide basis the effect on the market value of real properties as a result of contamination of the Fountain Creek Watershed by certain chemicals release by the use of firefighting foam." ECF No. 256-2 at 1. He provides a long list of "methodologies," *id.* at 1-2, but he does not explain how any of them could reliably be applied to the thousands of homes in the class area. He describes one commonly used and familiar appraisal methodology, comparative sales, and suggests that "[a] group of properties that exhibit a certain characteristic may be compared to a control group that does not exhibit that characteristic." However, he does not explain how that would work in this context, nor does he indicate that he has ever attempted such a project. At this point, at least, I cannot find that the opinions expressed in his January 26, 2018 letter have been shown to be reliable. I have not examined his deposition testimony, as his opinions would be limited to his report.

**ORDER**

For the reasons stated herein,

1. ECF No. 251, concerning Stephen King, is GRANTED.

2. ECF No. 252, concerning Kenneth Spaeth, is DENIED.

3. ECF No. 255, concerning Paul Rosenfeld and Matt Hagemann, is GRANTED IN PART AND DENIED IN PART.

4. ECF No. 256, concerning William James, is GRANTED.

5. ECF Nos. 257, 258, 259, 263, 312, 313 and 315, all of which are other defendants seeking to join in the motions filed by defendant 3M, are GRANTED.

DATED this 25th day of September, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge